IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David Carl Imhoff ] | |
| Plaintiff, ] | **14-0044** |
| v. ] | Civil Action # _____ |
| John Temas, Warden Washingto Co. Jail, ] | **COMPLAINT** |
| Deputy Warden Strawn, Wash Co. Jail, ] | |
| Micheal King, Captain Wash Co. Jail, ] | |
| Richard Snedeker, Sergeant Wash Co. Jail, ] | **RECEIVED** |
| Edward Strawn, Sergeant Wash Co. Jail, ] | JAN 1 0 201- |
| Nurse Cheryl McGavitt, Wash Co. Jail, | CLERK, U.S. DISTRICT COURT |
| Individually and in their official capacities, ] | WEST. DIST. OF PENNSYLVANIA |

## I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff Imhoff Seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2201. Plaintiff Imhoff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Western District of Pa. is an appropriate venue under 28 U.S.C. Section 1397(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3. Plaintiff David Carl Imhoff, is and was at all times mention herein a pre-trial detainee in the custody of the Washington County Correctional Facility in the state of Pennsylvania. He is currently confined in the afore mentioned Washington County Correctional Facility.

## III. DEFENDANTS

4. Defendant John Temas is the Warden of Washington County Correctional Facility. He is legally responsible for the operation of Washington County Correctional Facility and for the welfare of all the inmates detained there.

5. Defendant Edward Strawn is the Deputy Warden of Washington County Correctional Facility. He is also legally responsible for the operation of the Washington County Correctional Facility and for the welfare of all the inmates detained there.

6. Defendant Michael King is a Captain of the Washington County Correctional Facility who, at all times mentioned in this complaint, held the rank of Captain.

7. Defendant Richard Snedeker is an officer at the Washington County Correctional Facility who, at all times mentioned in this complaint, held the rank of Sergeant, in the processing area of the Jail.

8. Defendant Greg Strawn is an officer at the Washington County Correctional Facility who, at all times mentioned in this complaint, held the rank of Sergeant, in the processing area of the jail.

9. Defendant Cheryl McGavitt, is the Head Nurse of the Washington Co. Jail and at all times mentioned in this complaint was the Head Nurse in charge of medical staff and responsible for the welfare of the inmates.

## IV. FACTS

10. At all times relevant to this case, Plaintiff Imhoff was housed in the "green room" in central processing of Washington Co. Jail and the Clinic of the Washington County Jail.

11. On the day of April 24, 2013 the plaintiff was arrested and order into custody at the Washington Co. Jail. On arrival at the jail, the nurse on duty refused admittance into the jail for suspicion of possible overdose when plaintiff admitted to taking xanex and methadone. Plaintiff was taken to Washington Hospital where he was observed for several hours until medically cleared, at which time he was taken back to and admitted into Washington Co. Jail. Upon arrival at jail, plaintiff was processed and taken to clinic for medical/intake review where he told the nurse on duty that he has been taking benzodiazepines for months.

12. The jail has record of plaintiff having to be detoxed off benzodiazepines in the past.

13. The plaintiff was placed into and observation room in central processing, hereto referred to as "green room", where he immediately fell asleep.

14. Upon waking at approximately 5am on the 25th of April, he asked C.O. Molinaro to use the phone to make arrangements to post bail. C.O. Molinaro refused his request and stated that there is no phone. Plaintiff became agitated and started yelling and subsequently got into an argument with Captain King, who was also present. After arguing with Captain King, plaintiff returned to the mat on the floor and went back to sleep.

15. When plaintiff woke up several hours later, he had a misconduct report sitting on the floor next to him. Officer Molinaro was again working processing and when plaintiff asked him what the misconduct was for, he was told that "you threatened the captain". Later in the day plaintiff was being escorted to the bathroom and noticed on the count board that he was on d.c. status with a notation behind his name stating " GETS NOTHING-PER CAPT. KING".

16. Plaintiff asked about being removed from green room and was told that he had to wait until Captain King came back and talk to him.

17. On or about the 28th of April, plaintiff was removed from green room and placed into a regular cell in the back of processing at which time he

began to hallucinate from the withdraw of benzo's. Plaintiff asked several times daily to see the nurse and was told she would see him when she came. The nurse never came.

18. While being housed in regular cell in processing, plaintiff began to pound his plastic stool off the door. Officers Tiano, Emler and Snedeker came into the cell to retrieve the stool. While officer Emler was holding plaintiff down on the bed and officer Tiano was retrieving the stool, Defendant Snedeker kicked plaintiff in the face, leaving a scratch and bruise from the tread of his boot.

19. Later the same day on the 10pm-6am shift, plaintiff was yelling for help and Defendant Greg Strawn came into the cell and choked him, pressing his thumb into plaintiff's atoms apple. Later still, sergeant Strawn sprayed a short burst of pepper into the cell and plaintiff was left inside for about 30 minutes until sergeant Strawn took him out to shower off the pepper spray. Plaintiff was left with a pepper spray tainted blanket till he was moved back into green room.

20. On May 2nd, Captain King was back on duty for the 6am-2pm shift and moved plaintiff back into the green room alleging that plaintiff was suicidal.

21. Shortly after being moved into the green room, the plaintiff was suffering a bad asthma attack and began hyperventilating until he lost conscious and was never given medical treatment, even though his jail medical records state that he is asthmatic and he was in a camera

surveillanced, glass front room in front of several guards on captain King's shift.

22. Plaintiff complained for days, to every shift that worked that he wanted to see the nurse because something was wrong. He was always told to ask her whenever she came down, but she never came down.

23. On one day in particular, the Deputy Warden Strawn came down to processing and plaintiff begged him to send him to the hospital to the Psyche ward because something was wrong and the nurse won't see him. Warden Strawn responded to plaintiff that "there's always 3 sides to every story" and walked away.

24. Plaintiff spent approximately 3 weeks in the green room until he was moved into a regular camera observation cell in the processing area of the jail.

25. At all times in the green room, plaintiff was forced to urinate in the middle of the floor, towards a drainage cover in view of the camera and all people in processing, including guards and people waiting to go to court.

26. Whenever plaintiff had to use a toilet to defecate, he was escorted to a nearby cell that was equipped with sink and toilet except for the instances when Sergeant Snedeker was on duty, at which times he was forced to defecate on the floor with no toilet paper to clean up with and no water to wash hands with.

27. Finally on or about May 7th,(after 13 days worth of detox and hallucinations) Sergeant Chips was able to convince nurse Autumn

Loughman to check on plaintiff at which time was the first instance since being placed into the green room, that he was seen by a nurse.

28. Nurse Autumn checked plaintiff's vitals and immediately put him on Librium, which is the medication used to treat and counter the life threatening effects of benzodiazepine withdraw.

29. On May 9th the plaintiff was finally taken to see the Dr. after being incarcerated for 15 days.

30. Approximately 4 days later the plaintiff was taken out of the green room and placed into a camera observation room in processing and given the basic necessities of a sink and toilet.

31. The plaintiff was still denied a tooth brush, toothpaste, soap and blanket until a few days longer at which time Captain Fletcher finally gave them to him and he was transferred to the clinic, to be placed in a camera observation cell on Disciplinary and psyche watch for the remainder of his 60 day disciplinary.

32. While being housed in the clinic, which is comprised of a hallway and 6 cells, another inmate, Samuel Kusaj, started acting up. When Captain King came up to extract him from the cell to move him to the green room, he sprayed Mr. Kusaj with an excessive amount of pepper spray. Plaintiff was not removed from his cell to the outside recreation yard prior to captain King discharging the pepper spray and was subjected to a lingering effect of the spray which with his asthma felt equivalent to being water boarded until the spray dissipated, which was about 2 hours.

33.     While struggling to breathe, the plaintiff repeatedly hit his emergency button to try to get moved out of his cell to fresh air but went unanswered by medical staff and duty officer in charge of clinic. The plaintiff heard captain king, from out in the day space area say " leave em back there, they deserve it".

34.     All instances stated in this motion, where the plaintiff was house in the green room, observation room of processing, and in the clinic were recorded through a surveillance system that can be used to prove the instances described in plaintiffs complaint.

35.     Some instances involving the green room can be corroborated by an eye witness who at this time shall remain un-named due to her being on probation and plaintiffs concern that she will be subjected to retaliation.

## V. EXHAUSTION OF LEGAL REMEDIES

36.     Plaintiff Imhoff used the Grievance system in place at the Washington Co. Jail to address the problem as well as speaking personally to the Deputy Warder Strawn.

37.     Plaintiff Imhoff received no response to grievances filed, was not given grievances when he asked for them at other times and has no record of grievances filed, for submission as evidence, because the flawed grievance system in place at the Washington Co. Jail does not provide inmates with a carbon copy of grievance.

## VI. LEGAL CLAIMS

38.     Plaintiff Imhoff realleges and incorporates by reference paragraphs 1-37.

39.     Defendant Cheryl acted with deliberate indifference, ignoring plaintiff's repeated requests to receive medical treatment for his withdraw symptoms and failing to correct the actions of the nurses that she supervises, violating plaintiff's rights under the 8th & 14th Amendment to the United States Constitution, and caused plaintiff to suffer seizures as well as pain and suffering, emotional distress and reoccurring nightmares (possibly post traumatic stress disorder).

40.     Defendant Gerg Strawn's physical violence by choking and pepper spraying plaintiff while he was having a hallucinatory episode violated plaintiff's rights under the 8th & 14th Amendment of the United States Constitution, and caused plaintiff to suffer pain and suffering, emotional distress and reoccurring nightmares (possibly post traumatic stress disorder).

41.     Defendant Snedeker's physical violence as well as his lack of performing his duty by kicking plaintiff in the face, refusing to let plaintiff use toilet to defecate, refusing to summon nurse when plaintiff was suffering from seizures and hallucinations and overall menacing threatening demeanor, violated plaintiff's rights under the 8th & 14th Amendment of the United States Constitution, and caused plaintiff to suffer pain and suffering, emotional distress and reoccurring nightmares

(possibly post traumatic stress disorder) deprived him of basic human needs such as water to drink & toiletries( tooth brush, soap).

42.     By witnessing Defendants King,Snedeker,Strawn and Mcgavitt's illegal actions, failing to correct those misconducts and encouraging the continuation of the misconducts and behavior, Defendants John Temas and Deputy Edward Strawn also violated plaintiff's rights under the 8th & 14th Amendment of the United States Constitution, and caused plaintiff to suffer pain and suffering, emotional distress and reoccurring nightmares (possibly post traumatic stress disorder).

43.     Defendant Michael King's indifference to the wellbeing of plaintiff and participation, by and through himself and those he supervises, violated plaintiff's rights under the 8th & 14th Amendment of the United States Constitution, and caused plaintiff to suffer pain and suffering, emotional distress and reoccurring nightmares (possibly post traumatic stress disorder) deprived him of basic human needs such as water to drink & toiletries( tooth brush, soap) and subjected him to unnecessary punishment.

44.     Plaintiff has no means of providing a professional opinion due to his being incarcerated and not being able to substantiate appropriately until he can seek professional medical help upon his release or court order.

45.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue

to be irreparable injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement:

46. Granting plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution of the United States, and

47. A preliminary and permanent injunction ordering defendants to imply a new policy when dealing with an inmate experiencing the life threatening side effects of benzo withdraw and/or alcohol withdraw, and

48. Restructure the grievance procedures, including easy access to grievances without having to beg the guards for them and for the grievances to be redesigned to include a carbon copy side for inmates records.

49. Granting plaintiff compensatory damages in the amount of $300,000 against each defendant jointly and severally.

50. Plaintiff seeks punitive damages in the amount of $200,000 against each defendant jointly and severally.

51. Payment for any future medical expenses incurred as a result of this abuse.

52. Plaintiff also seeks a jury trial on the issues triable by jury.

53. Plaintiff seeks recovery of his costs in this suit, and

54. Any additional relief this court deems just, proper, and equitable.

Dated: December 30, 2013

Respectfully submitted,

David C. Imhoff  _/s/ David C. Imhoff_

Washington County Jail

100 w. Cherry Ave

Washington, Pa. 15301

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Washington County Jail, Washington. Pennsylavania on December 30, 2013

David C. Imhoff  _/s/ David C. Imhoff_