IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID CARL IMHOFF, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-44 |
| | ) | Judge Nora Barry Fischer/ |
| JOHN TEMAS, *Warden, Washington* | ) | Chief Magistrate Judge Maureen P. Kelly |
| *County Jail*; DEPUTY WARDEN | ) | |
| STRAWN, *Washington County Jail*; | ) | |
| CAPTAIN MICHAEL KING, *Washington* | ) | |
| *County Jail*; SGT. RICHARD | ) | Re: ECF No. 17 |
| SNEDEKER, *Washington County Jail*; | ) | |
| SGT. EDWARD STRAWN, *Washington* | ) | |
| *County Jail*; NURSE CHERYL | ) | |
| McGAVITT, *Washington County Jail, All* | ) | |
| Individually and in their official capacities, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

Plaintiff David Carl Imhoff commenced this *pro se* civil rights action with a Complaint seeking redress pursuant to 42 U.S.C. § 1983 for the alleged violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. (ECF No. 3).

Plaintiff alleges that Defendants, all employees of the Washington County Correctional Facility ("WCCF"), acted with deliberate indifference in denying him adequate medical care, forcing him to endure a nearly two week unaided detoxification from illicit drugs. Plaintiff claims that Defendants again acted with deliberate indifference when they denied him medical assistance during an asthma attack, resulting in the loss of consciousness. Plaintiff further alleges that certain of the Defendants used excessive force while he was suffering "hallucinatory episodes" triggered by his detoxification, and violated his rights through the use of pepper spray,

a kick to the face, and a pressure point choke. Finally, Plaintiff alleges the violation of his rights under the Fourteenth Amendment with regard to the conditions of his confinement, including the alleged denial of basic human needs such as drinking water, access to a toilet and toilet paper, and toiletries such as soap and toothbrush.

Pending before the Court is Defendants' "Motion to Dismiss in the Form of a Motion for Summary Judgment." (ECF No. 17) As originally filed, Defendants' Motion sought the entry of judgment in their favor as to Plaintiff's claims for excessive force as well as Plaintiff's claims for the denial of adequate medical care. Defendants have withdrawn the Motion to Dismiss/Motion for Summary Judgment as to Plaintiff's excessive force claims, (ECF No. 30), but seek the entry of judgment in their favor as to Plaintiff's claims regarding deliberate indifference to his medical needs. Defendants also seek the dismissal of any claims for medical malpractice, supervisory liability, as well as claims for punitive damages against the Defendants in their official capacities and any claims arising under the Fourteenth Amendment. Finally, Defendants assert entitlement to qualified immunity and seek dismissal on that basis.

For the following reasons, it is respectfully recommended that the "Motion to Dismiss in the Form of a Motion for Summary Judgment," ECF No. 17, be granted as to Plaintiff's claims for punitive damages asserted against Defendants in their official capacities. In all other respects, it is respectfully recommended that the Motion be DENIED.

## II. REPORT

### A. STANDARD OF REVIEW

#### 1. Pro Se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard). Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

#### 2. Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).

See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5C Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n. 3.

The United States Court of Appeals for the Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3. Motion for Summary Judgment Pursuant to Rule 56

Defendants have submitted evidence in support of their arguments as to the issue of the adequacy of Plaintiff's medical treatment and have filed their Motion to Dismiss "in the form of a Motion for Summary Judgment." The evidence submitted includes Plaintiff's scant medical records, as well as Defendants' affidavits denying any wrongdoing in the treatment of Plaintiff while incarcerated at WCCF. (ECF No. 20-1). "Whether or not to treat the motion [to dismiss] as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court." Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 335 (E.D. Pa. 1994). See also 5C Wright & Miller Civil Practice 3d § 1366.

In exercising the Court's discretion, conversion to a motion for summary judgment is "not warranted where there has been little or no discovery conducted by the parties" because "the parties may not be able to present enough material to support or oppose a motion for summary judgment since no factual record has yet been developed." Id. Here, where much of the evidence presented presents clear issues of material fact,[1] the Court declines Defendants' invitation to

---

[1] The records submitted reveal that after his arrest, Plaintiff reported using "Heroin = 10 to 20 a day; 4 = 2 mg of Xanax (excessively) and 310 mg of methadone." (ECF No. 20-1, p. 11). WCCF medical officials initially refused his admission to WCCF because he was "high," unable to answer questions regarding his drug usage, and his pupils were "fixed and nonreact[ive] to light." (ECF No. 20-1, p. 15). According to Defendant (Nursing Supervisor) Cheryl McGavitt, Plaintiff was brought to Washington Hospital, and discharged a few hours later as "stable."

*footnote continued on the next page*

entertain the "Motion to Dismiss in the form of a Motion for Summary Judgment," and, instead, will treat the entirety of the pending motion as a motion to dismiss in order to afford Plaintiff the opportunity to pursue appropriate discovery. Muniz v. Ganzler, No. 13-4343, 2014 WL 4933018 (E.D. Pa. Sept. 30, 2014).

The Court notes, however, that it may rely upon certain documents that are outside of the Complaint without converting the Motion to Dismiss into a Motion for Summary Judgment. In particular, in reviewing a Rule 12(b)(6) motion, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n. 3 (3d Cir. 2004) *abrogated on other grounds recognized in* In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010). Thus, a court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). In this case, given that Plaintiff's claims are based in large part upon the indisputably authentic medical records submitted by Defendants, the Court may consider the records without converting the pending motion into a motion for summary judgment.

---

Plaintiff was returned to WCCF with a diagnosis of "overdose." (ECF No. 20-1, p. 3). Defendant McGavitt states that Plaintiff has a history of requiring detoxification on two prior stays at WCCF in 2010 and 2007 and, yet, no medical treatment for detoxification was provided to Plaintiff for approximately two weeks. Based upon these facts of record, Plaintiff's allegations, if supported by adequate evidence after discovery, may render a motion for summary judgment in favor of Plaintiff a viable course of action in this litigation. See, e.g., Preyor v. City of Ferndale, 248 F. App'x 636, 642 (6th Cir. 2007), and see, Owens-El v. Robinson, 442 F. Supp. 1368, 1382 (W.D. Pa. 1978).

B.  DISCUSSION

As indicated, when considering a motion to dismiss, the Court must accept as true the factual allegations in the Complaint and draw all reasonable inferences in the Plaintiff's favor. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purposes of this decision, the essential facts are as follows.

On April 24, 2013, Plaintiff was arrested and placed into custody at WCCF. (ECF No. 3, ¶ 11). On arrival, Plaintiff was refused admission because he displayed signs of a drug overdose. Plaintiff was brought to Washington Hospital, where he remained under observation until cleared as stable and returned to WCCF. At WCCF, Plaintiff admitted current use of Heroin, Xanax and Methadone, and also told the nurse on duty that he had been taking Benzodiazepines "for months." (ECF No. 20-1, p.3). Plaintiff alleges that WCCF officials were aware that during prior periods of incarceration at WCCF, Plaintiff required detoxification for similar drug use.

Plaintiff was placed in an observation cell, and fell asleep. Upon waking, he argued with Defendant King regarding the availability of bail and release, and after becoming agitated, went back to sleep. Plaintiff awoke the next day, and found a misconduct had been issued against him for the verbal altercation with Defendant King. Plaintiff alleges that within the next few days, he began to hallucinate, suffer seizures, and experience withdrawal from the "benzo's." He repeatedly asked for a nurse, but was not seen. Plaintiff concedes that his behavior was disruptive and that he banged his cell door with a plastic stool. This conduct resulted in the retrieval of the stool by jail guards and, while he was held down by one guard, he was kicked in the face by Defendant Snedeker. Later, Plaintiff yelled for help, but Defendant Officer Greg

Strawn responded by choking Plaintiff and then spraying him with pepper spray. Plaintiff alleges he was not permitted to shower to remove the pepper spray for thirty minutes.

On May 2, 2013, Defendant King moved Plaintiff to an observation cell, contending that Plaintiff was suicidal. Plaintiff then suffered a "bad asthma attack" and lost consciousness. WCCF was aware that Plaintiff was asthmatic, and although Plaintiff was under surveillance during the attack, Plaintiff received no medical treatment.

Plaintiff continued to suffer psychological symptoms, which were brought to the attention of Deputy Warden Strawn, who refused to assist Plaintiff. Plaintiff alleges his ongoing withdrawal and hallucinations continued until May 7, 2013, when a guard convinced a nurse to see him. Based on his condition, the nurse immediately placed Plaintiff on medication to treat his withdrawal symptoms.

Plaintiff alleges he was inadvertently sprayed with pepper spray a second time, when guards were responding to another inmate. This triggered his asthma and while he suffered for two hours, he repeatedly pushed the cell emergency button to request assistance. Defendant King refused to obtain medical assistance for him, shouting "leave em back there, they deserve it." (ECF No. 3, ¶ 33).

Plaintiff seeks compensatory, punitive, declaratory and injunctive relief for the violation of his constitutional rights by Defendants King, Snedeker, Edward Strawn and McGavitt, for deliberate indifference to his medical needs, the inhumane conditions of his confinement, and for the use of excessive force in responding to his attempts to obtain assistance. Plaintiff alleges liability on the part of Defendant Warden John Temas, Deputy Warden Strawn and Defendant Michael King, who he alleges were personally aware of Plaintiff's need for medical treatment

and the use of excessive force against him, and yet failed to provide necessary treatment or intervene to prevent the unauthorized use of force against him.

### 1. Fourteenth Amendment Claims

Defendants seek the dismissal of Plaintiff's claims arising under the Fourteenth Amendment, contending that Plaintiff has not alleged a deprivation of a protected liberty or property interest. Defendants further argue that Plaintiff has otherwise failed to allege a due process claim that is not duplicative of his Eighth Amendment claim and therefore his Fourteenth Amendment claim is barred by the "'explicit textual source' rule set forth in Albright v. Oliver, 510 U.S. 266 (1994)." (ECF No. 18, pp. 16-17). The Court disagrees.

Plaintiff's medical treatment and condition of confinement claims are brought pursuant to 42 U.S.C. § 1983, which "is not itself a source of substantive rights," but merely provides "a mechanism for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979). Accordingly, the first step in any such claim is to identify the specific constitutional right allegedly infringed. Graham v. Connor, 490 U.S. 386, 394 (1989); and Baker v. McCollan, 443 U.S. at 140. In the Complaint, Plaintiff explicitly invokes the Eighth and Fourteenth Amendments to the United States Constitution. The Eighth Amendment prohibits the imposition of punishment that is "cruel and unusual," that is, punishment imposed "maliciously and sadistically to cause harm." Jackson v. Phelps, 575 F. App'x 79, 82 (3d Cir. 2014) (citing, *inter alia*, Hudson v. McMillan, 503 U.S. 1, 7 (1992) and Bell v. Wolfish, 441 U.S. 520, 535 (1979)). The Fourteenth Amendment, as relevant here, protects against the deprivation of liberty without due process to law, and in the case of an individual who has not yet been convicted of a

crime, prohibits any form of punishment prior to an adjudication of guilt. Id.; Bell, 441 U.S. at 535 (1979).

In support of their contention that Plaintiff's Fourteenth Amendment claims should be dismissed, Defendants rely upon the "explicit textual source rule." In Albright v. Oliver, 510 U.S. 266 (1994), the United States Supreme Court held "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process [through the Fourteenth Amendment], must be the guide for analyzing these claims." Id., at 273. See also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 F. App'x 553, 555 (3d Cir. 2008) ("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment"). In this case, however, based upon the allegations contained in Plaintiff's Complaint, the explicit textual source rule does not preclude Plaintiff's Fourteenth Amendment claims.

Plaintiff alleges his incarceration at WCCF occurred in connection with his arrest on April 24, 2013. At this stage of the litigation, it is apparent that Plaintiff was a pretrial detainee awaiting trial. (ECF No. 3, ¶ 11). The difference in status between a convicted prisoner and a pretrial detainee is important to determine the source and extent of Plaintiff's liberty and substantive due process rights.

The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because, prior to that time, it has not acquired "the power to punish with which the Eighth Amendment is concerned." Tri Thanh Nguyen v. Franklin Cnty. Sheriffs Dep't, 512 F. App'x 188, 190 (3d Cir. 2013) *cert. denied*, 133 S. Ct. 2774 (2013), quoting Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977). Once convicted, the Eighth Amendment then imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

With respect to pretrial detainees, because one may not be punished prior to conviction and sentencing, the Due Process Clause of the Fourteenth Amendment prohibits prison officials from imposing conditions that amount to punishment of a pretrial detainee. Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005), citing Bell v. Wolfish, *supra*. Accordingly, pretrial detainees are afforded greater constitutional protection under the Fourteenth Amendment than that provided to convicted prisoners under the Eighth Amendment. Id. at 167 n. 23 (citation omitted). Because Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims is predicated upon an erroneous application of the explicit textual source rule, it should be denied.

### 2. Adequacy of Medical Treatment

Defendants seek the entry of judgment in their favor as a matter of law as to Plaintiff's Fourteenth Amendment claim arising out of the alleged refusal to provide medical treatment during Plaintiff's withdrawal from excessive and illicit drug use. Defendants contend that "the medical records unequivocally reflect that Plaintiff was closely monitored during his incarceration at [WCCF] with regard to his detoxification, his mental illness as well as his

apparent suicide attempt." (ECF No. 18, p. 70). In addition, each named Defendant has filed an affidavit denying knowledge of Plaintiff's medical condition, denying a role in the failure to provide access to medical treatment, and denying that the treatment provided was constitutionally inadequate. Defendants also claims that each of them, including Nurse McGavitt, are non-medical prison officials, who properly relied upon the treatment provided to Plaintiff by a prison physician. (ECF No. 18, pp. 3-13; ECF Nos. 20-1 through 20-7).

As previously explained, in the absence of any discovery in this matter (given the preliminary stage of this litigation), the Court declines Defendants' invitation to entertain a motion for summary judgment in lieu of a motion to dismiss. Accordingly, the adequacy of the allegations of Plaintiff's Complaint will be measured against the standards applicable to a motion to dismiss, i.e., whether Plaintiff's allegations set forth a plausible claim for the denial of adequate medical care in violation of his federally protected constitutional rights.

It is clearly established that claims of inadequate medical care by pretrial detainees are "evaluate[d] ... under the Due Process clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment." Thrower v. Alvies, 425 F. App'x 102, 104 (3d Cir. 2011) (citing Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2004)). The United States Court of Appeals for the Third Circuit has held that the "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." Id. at 105 (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581–82 (3d Cir.2003)). Thus, courts apply the Eighth Amendment standard to determine whether a pre-trial detainee's rights were violated. See Lenhart v. Pennsylvania, 528 F. App'x 111, 115 (3d Cir. June 11, 2013) ("[A] pretrial detainee is

not entitled to Eighth Amendment protections, but nevertheless a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care[.]") (citing Natale, 318F.3d at 581).

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

A prisoner "claiming that the conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials," and thus "a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." Wilson v. Seiter, 501 U.S. 294, 294–97 (1991) (citing Estelle, 429 U.S. at 106). Therefore, a complaint must include some factual allegations of the two elements requisite to establish a claim of deliberate indifference, i.e., (1) a serious medical need and (2) a culpable mental state establishing deliberate indifference.

The United States Court of Appeals for the Third Circuit has held that a serious medical need is established where it has been diagnosed by a physician as requiring treatment, is easily recognizable by a lay person, or by "reference to the effect of denying the particular treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citing Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). A serious medical need may also be identified where there is "unnecessary and wanton infliction of pain," or where "denial or delay causes an inmate to suffer a life-long handicap or permanent loss...." Id. (citing Estelle 429 U.S. at 103).

The second element, deliberate indifference, consistently has been held to a standard above "mere allegations of malpractice." Id. at 346. However, deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Id. at 346 (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir.1976), cited with approval in Estelle, 429 U.S. at 105)(emphasis added). Further, "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment....'" Id. at 347 (citing West v. Keve, 571 F.2d 158, 161 (3d Cir.1978)).

The test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients" and "[c]ourts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)). Even so, preventing an inmate from receiving recommended treatment or "denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment ... violates the constitutional standard enunciated in Estelle." West, 571 F.2d at 163. Additionally, deliberate indifference has been found where "the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999) (citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)).

In this case, Plaintiff has sufficiently alleged facts to withstand dismissal at this early stage of the proceeding. First, Plaintiff alleges that he informed WCCF personnel of his extensive current drug use and that he repeatedly requested medical assistance when he began experiencing seizures and hallucinations in conjunction with his withdrawal from "benzo's." Plaintiff further alleges his past history of detoxification at WCCF, and that he was admitted on April 24, 2013, with a diagnosis of "overdose." Notwithstanding his repeated requests for medical attention, Plaintiff was provided no medical treatment for at least 8 days. Under nearly identical circumstances, the United States Court of Appeals for the Third Circuit held that a complaint sufficiently alleged deliberate indifference to the serious medical needs of a prisoner proscribed by the Eighth Amendment. <u>U.S. ex re. Walker v. Fayette County, Pa.</u>, 599 F.2d 575 (3d Cir. 1979).

Defendants also assert that Plaintiff has insufficiently alleged that any them had knowledge of Plaintiff's medical condition and/or participated in the refusal to provide medical treatment. However, Plaintiff plainly alleges that Defendants Deputy Warden Strawn, Greg Strawn, Snedeker, and King were present while he was suffering seizures, hallucinations, an asthma attack and/or stood yelling and begging for medical help. In addition, Plaintiff alleges that Defendant Cheryl McGavitt ignored his repeated written requests for medical attention to treat his withdrawal symptoms and that Warden John Temas witnessed his alleged mistreatment by WCCF staff and yet did nothing to assist Plaintiff. (ECF No. 3, ¶¶ 14, 17, 18, 19, 20, 1, 22, 23, 32, 36, 39, 40, 41, 42). These allegations, if supported by evidence after discovery, are

sufficient to establish a sufficiently culpable state of mind as to each Defendant to support a finding of deliberate indifference.[2]

### 3. Qualified Immunity

Government officials performing discretionary functions are entitled to immunity where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). To determine qualified immunity, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and also "ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Defendants make a cursory and broad sweeping claim to their entitlement to qualified immunity, contending that the allegations are insufficient to establish that any Defendant knowingly violated a clearly established constitutional right. (ECF No. 18, p. 17). However, the

---

[2] Defendants contend that Warden Temas and Deputy Warden Strawn should be dismissed because, as to each, Plaintiff's Complaint alleges only supervisory liability which is insufficient to support Section 1983 liability. "[L]iability cannot be predicated solely on the operation of respondeat superior. [However, p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(citations omitted). Here, Plaintiff alleges that he spoke personally to Deputy Warden Strawn and that both Deputy Warden Strawn and Warden Temas witnessed the conduct of each of the other Defendants. (ECF No. 3, ¶¶ 36, 42). At this preliminary stage of the litigation, and given Plaintiff's pro se status, Plaintiff's alleges "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Accordingly, Defendants' Motion to Dismiss should be denied with respect to claims asserted against Warden Temas and Deputy Warden Strawn.

16

law with regard to a constitutional obligation to provide care to inmates suffering unnecessary pain from a serious medical need has been clear since at least 1976, when the United States Supreme Court decided Estelle v. Gamble, 429 U.S. at 104. Further, since at least 1979, the United States Court of Appeals for the Third Circuit has recognized that Pennsylvania law affirmatively requires county correctional facilities to provide medical detoxification treatment for inmates physically dependent upon either controlled substances or alcohol. See, U.S. ex rel. Walker v. Fayette County, Pa., 599 F.2d at 575 (citing 71 P.S. § 1690.106(a)); and see, 4 Pa. Code § 260.2 ("State and county correctional institutions shall provide detoxification services in accordance with the protocol prepared by the task force as mandated by Act 63"). Given the allegations of Plaintiff's Complaint, at this stage of the litigation, Defendants are not entitled to qualified immunity.

### 4. Punitive Damages

Defendants seek the dismissal of Plaintiff's claims for punitive damages to the extent such claims are asserted against them in their official capacities. (ECF No. 18, p. 18). Certainly, because punitive damages are not recoverable against a municipal defendant in a Section 1983 claim, Plaintiff cannot recover punitive damages against Defendants in their official capacities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Mitros v. Borough of Glenolden, 170 F. Supp.2d 504, 508 (E.D. Pa. 2001). However, Plaintiff's Complaint "seeks punitive damages in the amount of $200,000 against each defendant jointly and severally," and makes no reference to their official or personal capacities. (ECF No. 3, ¶ 50).

It has long been recognized that "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." Smith v. Wade,

461 U.S. 30, 35 (1983). In order to qualify for a punitive damages award, "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3rd Cir. 1989).

Plaintiff's allegations regarding the intentional denial of medical treatment, excessive use of force and the conditions of Plaintiff's confinement are sufficient to set forth a plausible claim for punitive damages. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiff's claim for punitive damages be granted only with respect to a potential claim for punitive damages against Defendants in their official capacities.

### 5. Medical Malpractice Claims

Defendants seek the dismissal of any potential claims for medical negligence due to Plaintiff's failure to file a Certificate of Merit ("COM") in accordance with Pennsylvania Rule of Civil Procedure 1042.3. Medical malpractice or negligence claims brought under Pennsylvania law require the filing of a COM pursuant to Pennsylvania Rule of Civil Procedure 1042.3. The COM must include a statement from a licensed professional that there exists "a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was the cause in bringing about the harm." Courts have concluded that the requirements of Rule 1042.3 are substantive in nature, and the filing of a COM is a prerequisite to maintaining a medical malpractice or negligence claim in Pennsylvania. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir.2011).

Plaintiff has not filed a COM as required by the rule, but he does not allege any claims for medical negligence. To the contrary, Plaintiff's Complaint contains a "Legal Claims" caption and thereunder sets forth only the alleged violation of Plaintiff's rights arising under the Eighth and Fourteenth Amendments. (ECF No. 3, p. 9; ¶¶ 39 - 45). Accordingly, it is recommended that Defendants' Motion to Dismiss medical negligence claims be denied.

D.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' "Motion to Dismiss in the Form of a Motion for Summary Judgment." [ECF No. 17] be granted as to Plaintiff's claims for punitive damages asserted against Defendants in their official capacities. In all other respects, it is respectfully recommended that the Motion be DENIED.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

>Respectfully submitted,
>
>/s/ Maureen P. Kelly
>MAUREEN P. KELLY
>CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: October 30, 2014

cc: The Honorable Nora Barry Fischer
United States District Judge

All counsel of record by Notice of Electronic Filing

David Carl Imhoff
Washington County Jail
100 West Cherry Avenue
Washington, PA 15301